GRAYBAR ELECTRIC COMPANY v. HAROLD E. SHOOK, TRADING AND DOING BUSINESS AS MID-SOUTH CONTRACTING COMPANY

No. 48

(Filed 11 April 1973)

Sales § 10; Uniform Commercial Code §§ 19, 22— nonconforming goods — notice of rejection — storage by buyer — goods stolen — liability for loss

In this action to recover the sales price of aerial cable which was rejected by defendant because the order was for burial cable and which was stolen from defendant's storage space some three months after defendant gave plaintiff notice of rejection, the evidence was sufficient to support findings by the trial court that defendant gave prompt notice to plaintiff that he was rejecting the nonconforming cable, that defendant did not contract with plaintiff to return the cable and that defendant was not negligent in storing the cable in his regular storage space where plaintiff had delivered it next to a grocery store and near the store owner's dwelling, and the court properly concluded that defendant was not liable for loss of the cable. G.S. 25-2-510(1); G.S. 25-2-602(2)(b).

ON *certiorari* to the Court of Appeals to review its decision filed December 20, 1972, affirming a judgment of the Superior Court of BUNCOMBE County denying recovery and dismissing the plaintiff's action.

The record discloses that Judge Thornburg, without a jury, tried the case upon the pleadings, stipulations, and interrogatories. He made detailed findings of fact, stated his conclusions of applicable law, and dismissed the action at the plaintiff's cost. The Court of Appeals affirmed the judgment. We allowed certiorari.

The plaintiff, Graybar Electric Company, is a New York corporation doing business in North Carolina with State headquarters at Asheville. The defendant, Harold E. Shook, trading and doing business as Mid-South Contracting Company, is engaged in the business of installing underground telephone lines. In April, 1970, the defendant placed with the plaintiff an order for three reels of burial (underground) cable to be delivered on its construction job at Six Run Grocery Store in a rural section of Sampson County. The plaintiff delivered to the defendant three reels of cable all marked "burial." Examination disclosed that one of the reels complied with the order. Two reels were aerial cable, totally unsuited to defendant's needs. The defendant promptly notified the plaintiff of its mistake, paid for the one reel, and notified the plaintiff to repossess the two for which the defendant had no need.

The plaintiff requested that the nonconforming reels be returned. In an effort to comply with the plaintiff's wishes, the defendant contacted three different trucking concerns, but was unable to have the reels accepted by a carrier because of a strike in the trucking industry. The defendant gave this information to the plaintiff.

As its project continued beyond Six Run, the defendant placed the two reels of cable in the defendant's regular storage space directly beside the store and near the store owner's dwelling. This rented storage space "was well lighted at all times."

On July 20, 1970, the defendant discovered that one of the reels had been stolen. After this discovery, the defendant contacted a garage operator and made arrangements to have the remaining reel transferred to his garage some distance from Six Run. Before the operator actually made the transfer, the

Electric Co. v. Shook

second reel was stolen. The defendant gave the plaintiff prompt notice of the theft of both reels.

On January 29, 1971, the plaintiff brought this action seeking to recover from the defendant the sum of $9,989.85, on account of the stolen cable. The plaintiff based its action on the defendant's failure to return the two reels which the defendant had refused to accept. The plaintiff claimed the defendant promised to make the return. This the defendant denied. The defendant promised the plaintiff that he would endeavor to have a trucking company pick up and return the unacceptable shipment. The foregoing is the substance of the evidence material to this controversy.

The court found facts, of which the above is a summary, and based thereon concluded as a matter of law:

"1. The two reels of aerial cable delivered by the plaintiff did not conform to the contract.

"2. The defendant was entitled to inspect the goods after their arrival at the delivery site.

"3. Since the goods delivered failed to conform to the contract, the defendant was entitled to reject the goods delivered.

"4. The defendant notified the plaintiff within a reasonable time after delivery of the aerial cable that he was rejecting the non-conforming delivery.

"5. After rejection of the delivered goods, the defendant held the goods with reasonable care at the plaintiff's disposition for a time sufficient to permit the plaintiff to remove them. The defendant had no further obligation with regard to the rejected goods.

"6. In the alternative, if the defendant was a bailee of the aerial cable delivered by the plaintiff, the defendant was not liable for the loss of said cable because the plaintiff was duly notified that the cable was being held and that part of the cable had been taken. The plaintiff had sufficient notice and opportunity to take the necessary steps to protect its property. This the plaintiff did not do and cannot, therefore, hold the defendant liable for its loss."

The court entered judgment dismissing the plaintiff's action. The plaintiff appealed to the Court of Appeals which affirmed

the judgment of the superior court. Certiorari brought the case here for further review.

Bennett, Kelly & Long, P.A., by Robert B. Long, Jr., for plaintiff appellant.

Bruce A. Elmore by George W. Moore for defendant appellee.

HIGGINS, Justice.

The parties admitted the following: (1) The defendant placed an order with the plaintiff for three reels of burial (underground) cable to be delivered at Six Run Grocery Store, a rural community sixteen miles south of Clinton. (2) On April 6 the plaintiff delivered one reel of burial cable and, by mistake, delivered two reels of aerial cable. The aerial cable was totally unsuited to the defendant's use. Defendant notified the plaintiff of the mistake and received a request that the nonconforming reels be returned. Here the parties disagree. The plaintiff contends the defendant contracted to make the return. The defendant contends he agreed to contact a trucking company and request that it pick up and return the nonconforming reels. The defendant's request was turned down by three different trucking concerns on account of a strike in the trucking industry.

As the defendant's underground cable work progressed beyond the Six Run Grocery Store, the defendant left the nonconforming cable at the store and so notified the plaintiff. The evidence discloses that the cable was stored directly beside the grocery store building near the owner's dwelling in a space which the defendant rented for storage purposes. "The area where the cable was stored was well lighted at all times."

On July 20, 1970, the defendant discovered that one of the reels had been stolen and the following day notified the plaintiff. On that day, also, the defendant contacted a garage operator who promised to pick up the remaining reel and store it in his garage some distance from Six Run. However, before the transfer, the second reel was stolen. The defendant so notified the plaintiff.

The court, upon the disputed facts, found the defendant had not entered into a contract to return the nonconforming cable. A finding supported by evidence "must be accepted as final truth upon the appeal to the Supreme Court." *Mitchell v. Bar-*

*field,* 232 N.C. 325, 59 S.E. 2d 810. When findings of fact sufficient to determine the entire controversy are made by the court, failure to find other facts is not error. *Insurance Company v. Insurance Company,* 266 N.C. 430, 146 S.E. 2d 410. The plaintiff's claim, therefore, that it was prejudiced by the court's failure to make requested findings is not error. The court's actual findings determined the entire controversy.

The plaintiff, having made the error of delivering the nonforming goods on a moving job in the country, was entitled to notice of the nonconformity sufficient to enable it to repossess the nonconforming goods. The plaintiff was given prompt notice but delayed action for more than three months. The cable was stolen from the defendant's regular storage space where the plaintiff had delivered it. Evidence is lacking that a safer storage space was available. The defendant's workmen moved on, leaving the cable and the responsibility for its safety on the owner.

The plaintiff, failing in its efforts to establish a contract on the part of the defendant to return the shipment, however, contends in the alternative that G.S. 25-2-602 (2) (b) (Uniform Commercial Code) required the defendant to exercise reasonable care in holding the rejected goods pending the plaintiff's repossession and removal and that the defendant failed to exercise the required care in storage.

Actually, the plaintiff made an on the spot delivery at a store and dwelling in the country. The defendant's work force was stringing underground cable along the highway and the crew was in continual movement. Obviously the crew could not be expected to carry with it two thousand pounds of useless cable and was within its rights placing the cable in its regular storage space and notifying the plaintiff of the place of storage. Both parties realized that cable weighing almost a ton would require men and a truck to remove it. Also both parties assumed that the danger of theft from a well lighted store area was a minimal risk. The property itself was a poor candidate for larceny. The cable was permitted to remain where the plaintiff knew it was located for more than three months. The plaintiff, therefore, had ample opportunity to repossess its property.

The Uniform Commercial Code emphasizes promptness and good faith. The prospective purchaser may exercise a valid right to reject and even if he takes possession, responsibility expires

after a reasonable time in which the owner has opportunity to repossess. "Where a tender or delivery of goods so fails to conform to the contract as to give a right of rejection the risk of their loss remains on the seller until cure or acceptance." G.S. 25-2-510(1). The defendant did not accept the aerial cable. According to the evidence and the court's findings, the defendant acted in accordance with the request of the owner in attempting to facilitate the return of that which the defendant rejected. The plaintiff with full notice of the place of storage which was at the place of delivery did nothing but sleep on its rights for more than three months.

The superior court was fully justified in the findings of fact, conclusions of law, and in the judgment dismissing the action. The judgment of the Court of Appeals affirming the superior court was correct and is now

Affirmed.